1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KYLEE ANDERSEN, et al., | CASE NO. 3:21-cv-05391-DGE |
| Plaintiffs, | ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT |
| v. | |
| LEWIS MCCHORD COMMUNITIES LLC, a Delaware limited liability company; LINCOLN MILITARY HOUSING LEWIS MCCHORD PM LLC, a Delaware limited liability company, | |
| Defendants. | |

## I.      INTRODUCTION

This matter comes before the Court on Defendants' Partial Motion to Dismiss Plaintiffs' Complaint.  (Dkt. No. 31.)  The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the record and hereby GRANTS IN PART and DENIES IN PART Defendants' Partial Motion to Dismiss for the reasons discussed herein.

## II.    BACKGROUND

Plaintiffs are a group of individuals who formerly resided at properties owned and operated by Defendants LMH Lewis-McChord, LLC and LMH Lewis-McChord PM, LLC (collectively, "Defendants") on Joint Base Lewis McChord ("JBLM").  (Dkt. No. 24 at 3–18.) Plaintiffs allege that throughout their time as tenants at the properties, they experienced a range of issues, including leaks, water damage, moisture intrusion, and other effects of dilapidation and disrepair.  (*Id*. at 20–31.)  Plaintiffs allege that exposure to these varying degrees of disrepair caused them to suffer a variety of negative health impacts, including upper respiratory infections, skin rashes, headaches, and seizures.  (*Id*.)  Plaintiffs also allege the poor housing conditions exacerbated pre-existing health conditions, such as asthma and issues related to pregnancy.  (*Id*.)

All material events of this action took place on JBLM.  (Dkt. Nos. 31 at 3; 35 at 5.)  In 1917, the Washington State Legislature ceded territory in Pierce County to the Congress of the United States that today encompasses the area that was named Camp Lewis, later being named Fort Lewis.  *Concessions Co. v. Morris*, 186 P. 655, 656–57 (Wash. 1919).  In 1938, the Governor of Washington signed legislation allowing transfer of 900 acres of land and buildings to the federal government to be used as part of a large airbase, later named McChord Field.[1]  The two bases merged into JBLM in 2010 as part of a larger initiative by the Department of Defense.[2]

Plaintiffs filed the present action in Pierce County Superior Court on May 6, 2021 and Defendants removed the action to federal court.  (Dkt. No. 8 at 4.)  Plaintiffs filed their Amended Complaint on June 21, 2021.  (Dkt. No. 23.)  Plaintiffs bring the following claims against

---

[1] *McChord AFB – Early History*, THE MCCHORD AIR MUSEUM FOUNDATION, http://www.mcchordairmuseum.org/REV%20B%20OUR%20HISTORY%20%20MAF%20BASE%201939-1950.htm (last visited March 15, 2022).
[2] *Joint Base Lewis-McChord*, U.S. ARMY, https://home.army.mil/lewis-mcchord/index.php/about/history (last visited March 15, 2022).

1    Defendants: 1) trespass and nuisance, 2) breach of implied covenant of quiet enjoyment, 3)

2    constructive eviction, 4) breach of rental agreement, 5) breach of implied warranty of

3    habitability, 6) negligent misrepresentation, 7) rent abatement, 8) breach of the duty of care in

4    the Residential Landlord-Tenant Act ("RLTA"), and 9) negligent infliction of emotional distress.

5    (Dkt. No. 24 at 32–53.)

6                                    **III.    LEGAL STANDARD**

7         **A. Jurisdiction**

8         Land acquired by the federal government with the consent of a state legislature "for the

9    Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings" becomes a

10   federal enclave.  U.S. CONST. art. I, § 8, cl. 17.  Courts have federal question jurisdiction over

11   civil actions arising on federal enclaves.  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247,

12   1250 (9th Cir. 2006).  The Federal Enclave Doctrine also confers on federal courts subject matter

13   jurisdiction over state law claims that were available at the time the land of the federal enclave

14   was ceded to the federal government.  *See Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234,

15   1235 (10th Cir. 2012).  Therefore, the Court has federal question jurisdiction over the action.[3]

16        **B. Failure to State a Claim**

17        Federal Rule of Civil Procedure 12(b)(6) motions to dismiss may be based on either the

18   lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

19   legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Material

20   allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston*

21

22   _____

23   [3] The parties do not appear to dispute that the Court has jurisdiction as all relevant events
     occurred on JBLM, a federal enclave.  (Dkt. Nos. 31 at 3; 35 at 5.)  However, it is noted here that
     Defendants touched upon the issue of jurisdiction in their Motion to Dismiss without further
24   analysis.  (*See* Dkt. No. 31 at 5–6)

*v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 554–55 (2007) (internal citations omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555.  The complaint must

allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 547.

Defendants here move to dismiss Plaintiffs' claims arguing that: 1) the Federal Enclave

Doctrine and the choice-of-law provision bar claims brought under state law, and 2) the

remaining claims are barred by the Independent Duty Doctrine recognized in Washington courts.

(Dkt. No. 31 at 10–12.)  Plaintiffs argue that their claims can be brought under federal law and

that the Independent Duty Doctrine is inapplicable.  (Dkt. No. 35 at 6–13.)

## IV.    DISCUSSION

### A.  Choice-of-Law: Federal Law Applies to Federal Enclaves

Although the choice-of-law issues in this action are unique, they do not appear to be

disputed by the parties.  As all material events to the action took place on a federal enclave,

federal law applies.  *Allison*, 689 F.3d at 1236 (citing *Pac. Coast Dairy v. Dep't of Ag. of

Cal.,* 318 U.S. 285, 294 (1943)).  Furthermore, the parties both signed rental agreements that

included a choice-of-law provision that the "Agreement shall be governed exclusively by all

applicable federal laws". (Dkt. No. 31 at 4.) Plaintiffs also appear to concede that federal law applies.[4] (Dkt. No. 35 at 1, 6, 7.)

As the state retains no sovereignty after it cedes land to the federal government, any state laws in existence at the time the federal government acquired an enclave become federal law. *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952); *see Willis v. Craig*, 555 F.2d 724, 726 n.4 (9th Cir. 1977). This judicially created rule "assures that no area, however small, will be left without laws regulating private rights." *Id.* Laws subsequently enacted by the state are inapplicable in the federal enclave unless they come within a reservation of jurisdiction or are adopted by Congress. *See Paul v. United States*, 371 U.S. 245, 268 (1963). Therefore, in applying federal law to the present action, the Court applies both traditional federal law and the law of Washington State at the time of cession, 1917.[5]

## B. Federal Law as Basis for Plaintiffs' Claims

Defendants argue that the application of federal law bars several of Plaintiffs' claims. (Dkt. No. 31 at 7–10.) Plaintiffs allege that all their state law claims can be brought under federal law through federal statutes or state laws that predate the cession of the federal enclave. (Dkt. No. 35 at 1.)

### 1. 28 U.S.C. § 5001 Allows Claims for Personal Injury Based on State Law

---

[4] Plaintiffs' argument in the alternative, that the Court should invalidate the choice-of-law provision to the extent it bars any of Plaintiffs claims is unpersuasive. (Dkt. No. 35 at 7–8.) Plaintiffs incorrectly state that if the choice-of-law provision is invalidated, Washington law would apply. (*Id.* at 7.) As stated *supra*, the Federal Enclave Doctrine requires the Court to apply federal law. There is no basis to invalidate the choice-of-law provision as federal law applies regardless.

[5] Defendants appear to concede this point in their reply. (Dkt. No. 36 at 7) ("Plaintiffs state law personal injury claims are limited to those claims that existed prior to the creation of the federal enclave.").

1   As an exception to the Federal Enclave Doctrine, 28 U.S.C. § 5001 provides a civil action

2   for death or injury governed by the law of the State in which the federal enclave is located.  The

3   current version of 28 U.S.C. § 5001 reads:

4   (a) Death.--In the case of the death of an individual by the neglect or wrongful act
    of another in a place subject to the exclusive jurisdiction of the United States within
5   a State, a right of action shall exist as though the place were under the jurisdiction
    of the State in which the place is located.

6

7   (b) Personal injury.--In a civil action brought to recover on account of an injury
    sustained in a place described in subsection (a), the rights of the parties shall be
    governed by the law of the State in which the place is located.

8

9   The statute "envisions the application of the current substantive law of the surrounding

10  state in actions for death or *personal* injury occurring within a federal enclave."  *Vasina v.*

11  *Grumman Corp.,* 644 F.2d 112, 118 (2d Cir. 1981) (emphasis added) (interpreting 16 U.S.C. §

12  457[6], the predecessor to § 5001).  Unlike claims brought under a state law pre-dating cession,

13  state law claims brought under § 5001 are interpreted using current state law.

14  Defendants argue Plaintiffs cannot bring their negligent infliction of emotional distress

15  claim because § 5001(b) only allows for claims stemming from physical injuries, not purely

16  emotional injuries.  (Dkt. No. 31 at 14–15.)

17  District courts in this circuit appear to be split as to whether the term "personal injury" in

18  § 5001(b), and its predecessor statute 16 U.S.C. § 457, includes purely emotional injuries.

19  *Compare Shurow v. Gino Morena Enterprises, LLC,* 2017 WL 1550162, at *3 (S.D. Cal. May 1,

20  2017) (citing *Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 7 (D.P.R. 1998)), *with*

21

22

23  _____

    [6] Congress repealed 16 U.S.C. § 457 on December 19, 2014 and replaced it with 28 U.S.C. 28

24  U.S.C. § 5001.  Although there are cosmetic differences between the two statutes, there are no
    substantive differences relevant to this case.

ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT - 6

1    *Kasperzyk v. Shetler Sec. Servs., Inc.*, 2014 WL 31434, at *12 (N.D. Cal. Jan. 3, 2014)

2    (recognizing "personal injury" to include purely emotional injuries).

3          In *Shurow*, the plaintiff brought an employment discrimination action arising on a

4    military base in California, alleging multiple claims, including intentional and negligent

5    infliction of emotional distress.  2017 WL 1550162, at *1 (S.D. Cal. May 1, 2017).  Recognizing

6    that the Federal Enclave Doctrine applied, the court looked at whether the plaintiffs emotional

7    distress claims could be brought under § 5001.  Looking at the term "personal injury," the court

8    believed there were only two feasible interpretations: "physical injury" or "any injury."  *Id*. at *3.

9    *Shurow*, however, did not distinguish between emotional and economic injury under the label of

10   "any injury".  As such, *Shurow* concluded that "any injury" was overbroad and otherwise "co-

11   extensive" with Article III standing to sue.  *Id*.  To accept "any injury" as being within the

12   definition of personal injury "would swallow the entire Federal Enclave Doctrine."  *Id*.  Thus,

13   *Shurow* agreed with the court in *Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 7

14   (D.P.R. 1998) that "§ 5001 creates an exception allowing recovery only for damages stemming

15   from a physical injury to one's person."  *Id*.

16         In contrast, *Kasperzyk* did distinguish between emotional and economic injury.  In that

17   case, a plaintiff in California brought various claims alleging employment discrimination on a

18   federal enclave.  2014 WL 31434, at *2–3 (N.D. Cal. Jan. 3, 2014).  The court rejected the *Kelly*

19   courts definition of "personal injury" to include only physical injuries.  *Id*. at *12–13.  *Kasperzyk*

20   recognized that although personal injury at common law meant only physical injuries, it did not

21   mean that the statute "freezes into its scope a historic and static view of what can constitute

22   personal injury."  *Id*. at *12.  Looking to state law and Black's Law Dictionary, *Kasperzyk* found

23   that the term "personal injury" encompassed purely emotional injuries because purely emotional

24

1   injuries were still an injury to a person, even if there is no accompanying physical injury.  *Id*.

2   Although *Kasperzyk* recognized that purely emotional injuries could be brought under the

3   statute, it noted that *purely economic injuries* could not.  *Id*. at *13.  Thus, the Federal Enclave

4   doctrine would continue to bar certain injuries even if emotional injuries were included within

5   the term "personal injury".

6        As a result, the Court agrees with *Kasperzyk* that purely emotional injuries can be

7   brought under § 5001, and in doing so notes that the Federal Enclave doctrine is not subsumed

8   by such interpretation.  Looking at the statute, the term "injury" is undefined.  However, the

9   Court looks to the title of the section which is labeled "personal injury".  28 U.S.C. § 5001(b);

10  *see also Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute

11  and the heading of a section are tools available for the resolution of a doubt about the meaning of

12  a statute.") (internal quotation marks and citations omitted).

13       The dictionary definition of the term "personal injury" includes both bodily injury and

14  private injury, which includes mental suffering.  *See* Black's Law Dictionary (11th ed. 2019)

15  ("Personal injury [–] 1. In a negligence action, any harm caused to a person, such as a broken

16  bone, a cut, or a bruise; bodily injury. — Also termed *bodily injury*. 2. Any invasion of a

17  personal right, including mental suffering and false imprisonment. — Also termed *private*

18  *injury*.").

19       In the Court's view, the distinction is not between physical injury and "any injury" as the

20  *Shurow* court suggests, but whether "personal injury" encompasses only physical injuries, or

21  non-physical injuries to a person, including emotional injuries.  Although no higher court has

22  delved into the term as written in § 5001, the Supreme Court in dicta analyzing another statute

23  recognized the term "personal injuries" commonly includes both physical and nonphysical

24

injuries.  *United States v. Burke*, 504 U.S. 229, 237 n.6 (1992) ("the courts and the IRS long

since have recognized that § 104(a)(2)'s reference to "personal injuries" encompasses, *in accord*

*with common judicial parlance and conceptions*, . . . nonphysical injuries to the individual, such

as those affecting emotions, reputation, or character, as well.") (emphasis added).

In addition, if Congress intended "personal injuries" in § 5001 to mean only physical

injuries, it could have done so.  In other contexts, Congress has rejected the use of the term

physical injury in place of personal injury, demonstrating that the two terms are not synonymous.

*Id.* (recognizing that Congress rejected an amendment to § 104(a)(2) limit it to cases involving

"physical injury or physical sickness" and instead adopting the language "personal injury or

physical sickness").  Therefore, the Court finds that "personal injury" in § 5001 includes both

physical and emotional injuries, and Plaintiffs can bring claims for purely emotional injuries

under the statute, including their negligent infliction of emotional distress claim.[7]

However, to the extent Plaintiffs are seeking to recover for economic injuries, they have

put forth no support for the proposition that a personal injury under § 5001 can be understood to

include economic injuries.  *Kasperzyk*, 2014 WL 31434, at *13.

2.  Claims Pre-dating Cession are Allowed

As the Federal Enclave Doctrine recognizes state law at the time of cession as federal

law, all of Plaintiffs' claims that were available to a plaintiff in Washington at the time of cession

---

[7] Plaintiffs also point to the Servicemembers Civil Relief Act ("SCRA") in support of its claim
for negligent infliction of emotional distress.  (Dkt. No. 35 at 9.)  As Plaintiffs have not alleged a
SCRA claim, nor cited to any authority suggesting it can be used in this manner, the statute is not
applicable to his claims.  As the claim can be brought under § 5001, the argument is moot.

1    are available to Plaintiffs under federal law.  In this case, JBLM was ceded to the federal

2    government in 1917.[8]  Therefore, any causes of action available at that time are now federal law.

3               3.   10 U.S.C. §2894(g) is Not Applicable

4         Plaintiffs cite to 10 U.S.C. §2894(g) titled "Landlord-Tenant Dispute Resolution Process

5    and Treatment of Certain Payments During Process."  (Dkt. No. 35 at 9–11.)  However, this

6    statute was passed in December 2019, after the rental agreements were signed and after the

7    issues before the Court took place.  Plaintiffs fail to explain how the law applies retroactively or

8    to cite any authority suggesting it can be used in this manner.  The Court finds the statute

9    inapplicable in the present context.

10        **C.  Washington's Independent Duty Doctrine Does Not Apply**

11        Defendants argue that the Washington State Independent Duty Doctrine applies to

12   prevent Plaintiffs from bringing tort claims that do not arise independently of the terms of the

13   contract.  (Dkt. No. 31 at 10–12.)

14        In Washington courts, the Independent Duty Doctrine prevents Plaintiffs in a contractual

15   relationship with the defendant from bringing claims for injuries from a breach of a tort law duty

16   of care that do not arise independently of the contract.  *Eastwood v. Horse Harbor*, 241 P.3d

17   1256, 1266 (Wash. 2010).  The Supreme Court of Washington has applied this doctrine

18   sparingly.  *Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 969 (Wash. 2012)

19

20   ───────────────────

21   [8] The Court recognizes that the part of JBLM that was formerly McChord Field was ceded to the
     Federal Government in 1938, 21 years after Fort Lewis.  For purposes of this case, any actions
     first recognized between 1917 and 1938 raise the question of whether laws promulgated by
22   Washington during that time apply only to the portion of JBLM that was previously McChord
     Field.  As the only cause of action that arose between the period, negligent misrepresentation,
23   can be brought under § 5001, it is not necessary for the Court to discuss the issue in this order.
     However, both parties should be prepared to address the issue should it present itself in the
24   future.

1    (quoting *Eastwood,* 241 P.3d at 1270–76 (Chambers, J., concurring)) ("[I]n Eastwood we

2    directed lower courts not to apply the [independent duty] doctrine to [bar] tort remedies 'unless

3    and until this court has, based upon considerations of common sense, justice, policy and

4    precedent, decided otherwise.'").

5            Defendants fail to explain how the Court, applying the law of the federal enclave, would

6    allow for the application of a Washington State doctrine not in existence at the time of cession of

7    the federal enclave.  Nor have Plaintiffs explained in their briefing how a comparable doctrine in

8    federal law applies to prevent Plaintiffs from bringing their tort claims.  Therefore, the Court will

9    not grant dismissal of any of Plaintiffs' claims based on the Independent Duty Doctrine.

10       **D.  Review of Plaintiffs' Claims**

11         1.  Count I: Trespass and Nuisance

12           Defendants appear to concede that the claims of trespass and nuisance existed in

13   Washington prior to the creation of the federal enclave (Dkt. No. 36 at 7) and the Court agrees.

14   *See Sargent v. City of Tacoma*, 38 P. 1048, 1049 (Wash. 1894).  Furthermore, to the extent

15   Plaintiffs seek to recover damages due to their personal injuries, plaintiffs in Washington can

16   recover for harms suffered because of injuries caused by trespass, *Bradley v. Am. Smelting &*

17   *Ref. Co.*, 709 P.2d 782, 785 (1985), and nuisance, Washington Revised Code § 7.48.120.

18   Therefore, Plaintiffs can bring a claim under § 5001(b).  Defendants' Motion to Dismiss is

19   DENIED as to Plaintiffs' trespass and nuisance claim.

20         2.  Count II: Breach of Implied Covenant of Quiet Enjoyment

21           Defendants appear not to dispute that claims for breach of the implied covenant of quiet

22   enjoyment existed in Washington prior to the creation of the federal enclave (Dkt. No. 36 at 7)

23   and the Court agrees.  *See Morgan v. Henderson*, 8 P. 491, 491 (Wash. 1885).  Therefore,

24

Defendants' Motion to Dismiss is DENIED as to Plaintiffs' breach of implied covenant of quiet enjoyment claim.

       3.   <u>Count III: Constructive Eviction</u>

Defendants appear to concede that the claims of constructive eviction existed in Washington prior to the creation of the federal enclave (Dkt. No. 36 at 7) and the Court agrees. *Ralph v. Lomer*, 28 P. 760, 763 (Wash. 1891). Therefore, Defendants' Motion to Dismiss is DENIED as to Plaintiffs' constructive eviction claim.

       4.   <u>Count IV: Breach of Rental Agreement</u>

Defendants do not dispute that the claim of breach of contract existed in Washington prior to the creation of the federal enclave (Dkt. No. 36 at 7) and the Court agrees. *Ransberry v. N. Am. Transp. & Trading Co.*, 61 P. 154 (Wash. 1900). Therefore, Defendants' Motion to Dismiss is DENIED as to Plaintiffs' breach of rental agreement constructive eviction claim.

       5.   <u>Count V: Breach of Implied Warranty of Habitability</u>

Defendants correctly point out that Washington first recognized the common law theory of implied warranty of habitability in 1973. (Dkt. No. 36 at 7–8.) However, Washington has adopted the Restatement (Second) of Property: Landlord and Tenant § 17.6 (Am. L. Inst. 1977) which provides a remedy for physical harm suffered because of the breach of implied warranty of habitability. *Gerlach v. Cove Apartments, LLC*, 471 P.3d 181, 193 (Wash. 2020) ("we adopt *Restatement* § 17.6 to the extent that we recognize a landlord's liability in tort to tenants and their guests for breach of the implied warranty of habitability."). Plaintiffs' Amended Complaint alleges that Defendants breach "caused serious personal injuries and damages to Plaintiffs." (Dkt. No. 23 at 43.) Plaintiffs have thus alleged an injury under § 5001(b) and

1    therefore can bring the claim.  Therefore, Defendants' Motion to Dismiss is DENIED as to

2    Plaintiffs' breach of the implied warranty of habitability claim.

3            6.   Count VI: Negligent Misrepresentation

4            Defendants correctly point out that Washington first recognized the common law theory

5    of negligent misrepresentation in 1934.  (Dkt. No. 36 at 7–8.)  However, a plaintiff in

6    Washington may recover for emotional distress damages under a claim of negligent

7    misrepresentation.  *Bloor v. Fritz*, 180 P.3d 805, 820 (Wash. App. 2008) (upholding trial court's

8    decision to award emotional distress damages for a claim of negligent misrepresentation related

9    to a real estate transaction).  Plaintiffs therefore can bring a claim of negligent misrepresentation

10   under § 5001(b).  Defendants' Motion to Dismiss is DENIED as to Plaintiffs' negligent

11   misrepresentation claim.

12           7.   Count VII: Rent Abatement

13           Plaintiffs' have offered no support for how the remedy of rent abatement is available

14   under federal law predating cession.  As § 5001 does not provide a remedy for Plaintiffs to

15   recover economic injuries and they have not provided support for any alternative, Defendants'

16   Motion to Dismiss is GRANTED as to Plaintiffs' rent abatement claim and the claim is

17   DISMISSED WITHOUT PREJUDICE.

18           8.   Count VIII: RLTA

19           Defendants correctly point out that the RLTA went into effect in 1973.  (Dkt. No. 36 at

20   7–8.)  The Washington Supreme Court has also explicitly held that a tenant cannot recover for

21   personal injuries under the RLTA, *Gerlach v. Cove Apartments, LLC*, 471 P.3d 181, 191 (Wash.

22   2020), foreclosing the application of § 5001.  Therefore, Defendants' Motion to Dismiss is

23   GRANTED as to Plaintiffs' RLTA claim and the claim is DISMISSED WITH PREJUDICE.

24

9.   <u>Count IX: Negligent Infliction of Emotional Distress</u>

Defendants correctly point out that Washington first recognized the common law theory of negligent infliction of emotional distress in 1976.  (Dkt. No. 36 at 8.)  However, a plaintiff in Washington can seek recovery for emotional damages under the tort and therefore Plaintiffs can bring the claim of negligent infliction of emotional distress under § 5001.  *See supra* part III.B.1. Therefore, Defendants' Motion to Dismiss is DENIED as to Plaintiffs' negligent infliction of emotional distress claim.

## V.   CONCLUSION

Accordingly, and having considered Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendants' Partial Motion to Dismiss Plaintiffs' Complaint is GRANTED IN PART and DENIED IN PART.

1.   Plaintiffs' RLTA claim is DISMISSED WITH PREJUDICE.

2.   Plaintiffs' rent abatement claim is DISMISSED WITHOUT PREJUDICE.

3.   The Parties are instructed to file a join status report, including a proposed discovery schedule, within **30 days** of this Order.

Dated this 24th day of March 2022.

David G. Estudillo
United States District Judge